**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
(Alexandria Division)

|  |  |  |
|---|---|---|
| ASHLEY HOFFMAN<br>8009 Battery Road<br>Alexandria, Virginia 22308 | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Case No. _____ |
| Fairfax County School Board<br>8115 Gatehouse Road #5400<br>Falls Church, Virginia 22043 | ) ) ) ) ) | |
| Serve: Elizabeth Murphy<br>Registered Agent<br>Fairfax County Public Schools<br>8115 Gatehouse Road #5101<br>Falls Church, Virginia 22043 | ) ) ) ) ) ) | |
| Defendant. | ) ) ) | |

**COMPLAINT**

COMES NOW THE PLAINTIFF, ASHLEY HOFFMAN, by counsel, and moves this Court for entry of judgment in her favor and against the Defendant, FAIRFAX COUNTY SCHOOL BOARD, and in support, alleges and avers as follows:

**NATURE OF ACTION**

1.      Plaintiff Ashley Hoffman ("Ms. Hoffman" or "Plaintiff") tragically lost her son when he was only four hours old.  The Fairfax County School Board ("FCSB" or "Defendant"), led by an administrator (Grace Taylor) treated her horribly; Ms. Hoffman sued; and the matter was settled ███████████████████████████████████.  Four years later, after the departure of Ms. Hoffman's beloved principal, Dr. Darwin Barker, Grace Taylor

has again illegally targeted Ms. Hoffman, and ███████████████████████

███████████████   As FCSB is well aware, Ms. Hoffman suffers from anxiety and other

related conditions resulting from the death of her son.  Not only is this second round of bad acts

illegal; it is also purposely intended to exacerbate Ms. Hoffman's preexisting medical conditions

and cause severe emotional distress.

## PARTIES

2.      Ms. Hoffman is a resident and citizen of Fairfax County in the Commonwealth of

Virginia.

3.      Defendant FCSB is empowered to govern the Fairfax County Public School

("FCPS") System, and is registered to do business and is in good standing in the Commonwealth

of Virginia.  FCSB employs more than 27,500 individuals in Fairfax County, making it the third-

largest employer in the Commonwealth of Virginia.  FCSB also provides education at a total of

196 elementary, middle and high schools in Fairfax County in the Commonwealth of Virginia.

4.      Ms. Hoffman is an "employee" within the meaning of 42. U.S.C. §12111(4).

5.      FCSB is an "employer" within the meaning of 42. U.S.C. §12111(5)(A).

## JURISDICTION AND VENUE

6.      Jurisdiction over Ms. Hoffman's Title VII, ADA, and 42 U.S.C. § 1983 claims is

proper pursuant to 28 U.S.C. § 1331, because the claims arise under the laws of the United

States.  Jurisdiction over Ms. Hoffman's Title VII claim is also proper pursuant to 42 U.S.C. §

2000e-5(f)(3).

7.      The conduct giving rise to the causes of action set forth in this Complaint

occurred in the Commonwealth of Virginia, and the injuries to Ms. Hoffman occurred in the

Commonwealth of Virginia.

2

8.    The amount in controversy in this case exceeds the jurisdictional minimum amount for this Court.

9.    Venue over Ms. Hoffman's claims is proper as FCSB resides within this judicial district.  28 U.S.C. § 1391(b)(1).

## PROCEDURAL STATUS

10.    Ms. Hoffman timely filed a Complaint with the Virginia Office of Civil Rights ("OCR") and a Charge with the United States Equal Employment Opportunity Commission ("EEOC") on December 19, 2023.

11.    Pursuant to the EEOC and OCR's workshare agreement, the Virginia OCR office transferred this matter to the EEOC.

12.    On November 5, 2024, the EEOC issued a Notice of Right to Sue to Ms. Hoffman.

13.    This action is timely filed and all procedural prerequisites to suit have been met.

## BACKGROUND

*Ms. Hoffman's longtime ties to, and employment with, Fairfax County Public Schools*

14.    Ms. Hoffman is a lifelong resident of Northern Virginia.  She grew up in Alexandria, where she attended public schools and graduated from George Mason University.

15.    Ms. Hoffman began her employment with FCSB in February 2006 as a long-term substitute teacher at West Potomac High School.  After receiving her Master's Degree in Education from George Mason University, Ms. Hoffman continued her employment with FCSB as an English Teacher at Carl Sandburg Middle School ("CSMS") in the Commonwealth of Virginia in 2008.

16.    Since 2008, CSMS is the only school where Ms. Hoffman has worked.

17.    In August 2008, Ms. Hoffman met her now-husband, Chad Hoffman ("Mr. Hoffman") at CSMS where he was also a teacher – and still is to this day.  Like Ms. Hoffman, Mr. Hoffman has taught 7th grade in an upstairs classroom throughout his tenure at CSMS.

18.    The Hoffmans were married in 2010, and own a home near CSMS.  Three of their children attend Waynewood Elementary School, which feeds into CSMS, and their oldest child is in 7th grade at CSMS.

### Ms. Hoffman's family tragedy and subsequent litigation

19.    The Hoffmans' idyllic life took a tragic turn on February 25, 2016.

20.    Ms. Hoffman was pregnant with twin boys and went into premature labor.  One of the baby boys died just four hours after birth.  The other baby survived, but was only 1 pound, 14 ounces at birth, and remained in the Neonatal Intensive Care Unit ("NICU") at Johns Hopkins for 76 days.

21.    Ms. Hoffman was severely traumatized, and subsequently diagnosed with PTSD, anxiety, and depression.

22.     Thankfully, the community, including CSMS staff members and families, rallied around the Hoffmans, and *inter alia*, even organized a "Go Fund Me" for their medical expenses.  Thus, CSMS is a special place for Ms. Hoffman – it is the only place where she has ever taught; it is where she met her husband; and it is where she was surrounded with a support network when she suffered an unspeakable tragedy.

23.    After the death of her baby, Ms. Hoffman still wanted to return to work.  Accordingly, FCSB and Ms. Hoffman's doctors arrived at a plan by which Ms. Hoffman could return to work in August 2016, with certain accommodations.

24.     However, CSMS's principal at the time, Terrance Yarborough ("Mr. Yarborough"), refused to accommodate Ms. Hoffman.  That principal's actions were inexplicably fully supported by the Executive Principal of Region 3, Grace Taylor ("Ms. Taylor").

25.     As a result, the 2016-17 school year had constant conflict regarding Ms. Hoffman's return; Ms. Hoffman's leave and return after the birth of another baby in February 2017; and scrutiny of Ms. Hoffman after she returned from maternity leave.

26.     In April 4, 2017, Mr. Yarborough was placed on administrative leave and subsequently terminated for cause.  Among other things, he was charged with assault and battery after spanking a female student in front of multiple students and staff in the school cafeteria.  However, Mr. Yarborough never lost the support of Ms. Taylor, who continued to be heavily involved in all matters related to Ms. Hoffman's employment at FCSB.

27.     Indeed, at the end of the school year, on June 27, 2017, Ms. Taylor formally reprimanded Ms. Hoffman (the first and only formal reprimand she had ever received) specifically regarding subjective issues related to "professionalism" (the "Reprimand Letter").  Ms. Taylor also recommended Ms. Hoffman be transferred from CSMS for no legitimate reason whatsoever.

28.     This was the last straw for Ms. Hoffman, and she retained legal counsel.  She filed a Charge with the EEOC, and the EEOC immediately issued a Right to Sue.  Ms. Hoffman then filed suit in the United States District Court for the Eastern District of Virginia (Alexandria Division), *Hoffman v. Fairfax County School Board*, C.A. No. 1:18cv1191 (TSE/JFA) alleging hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); interference with, and retaliation for, the exercise of rights granted under the

Family and Medical Leave Act ("FMLA"); discrimination; failure to accommodate; hostile work environment and retaliation in violation of the Americans with Disabilities Act ("ADA"); and a claim for deprivation of her Constitutional rights arising out of FCSB' acts (collectively, the "2018 Litigation").



34.



35.

36.  Ms. Hoffman returned to work at CSMS in August 2019.

37.

38.

*Ms. Hoffman is an excellent teacher*

39.  At all times throughout her employment at CSMS, Ms. Hoffman performed her job duties at a high level. She also consistently worked long hours and performed extra work without any additional compensation.

40.  For the four school years after the 2018 Settlement Agreement, examples of Ms. Hoffman's excellence are as follows:

7

- Ms. Hoffman's students repeatedly received excellent SOL scores that were much higher than others at both CSMS and FCSB. **Most recently, for the 2022-23 school year, Ms. Hoffman's 7th Grade Reading SOL scores were a 89.2-90.1% overall pass rate. This was much higher than both the CSMS average pass rate (67%) and FCPS Division average pass rate (79%).**

- Ms. Hoffman was repeatedly recognized as a "FCPS Cares" Employee after being nominated by fellow co-workers.

- In January 2023, Ms. Hoffman was the recipient of the "Panther Positivity Award," which is selected by CSMS staff members.

41. Moreover, throughout Dr. Barker's tenure at CSMS, there were no problems associated with Ms. Hoffman's accommodations.

*Notwithstanding Ms. Hoffman's indisputable excellence as a teacher, FCSB engaged in illegal discriminatory and retaliatory action against Ms. Hoffman AGAIN,* ████████████ ████████████

42. In December 2021, Ms. Taylor was appointed as "interim" or "acting" Assistant Superintendent of Region 3, which includes CSMS. On or about the same time, Jesse Kraft ("Mr. Kraft") was appointed Executive Principal of Region 3. As such, Mr. Kraft reported to Ms. Taylor.

43. On October 7, 2022, Dr. Barker resigned. Prior to his departure, Dr. Barker wrote a glowing letter regarding Ms. Hoffman and placed it in her personnel file. A true, accurate copy of Dr. Barker's letter is attached hereto as **Exhibit B.** Dr. Barker subsequently disclosed to Administrative Team Members Francis DeLeon ("Ms. DeLeon") and Dr. Dionne Williams ("Dr. Williams") that Ms. Hoffman was one of the top five teachers at CSMS.

44.    After Dr. Barker's departure, Ms. Taylor hired her friend and retired FCSB employee, Justine Klena ("Ms. Klena"), as the CSMS "Interim" Principal.  Immediately upon Ms. Klena's hire, the mistreatment and discrimination against Ms. Hoffman began all over again.

45.    Said mistreatment was escalated by the November 2022 departure of Dr. Desmond Dawkins ("Dr. Dawkins"), the Assistant Principal who oversaw the English Department, and thus had directly overseen Ms. Hoffman the last three and a half years. Tellingly, after his departure, Dr. Dawkins informed Ms. Hoffman he believed Dr. Klena was "targeting" Ms. Hoffman.

46.    At some point after Dr. Barker's departure, Ms. Taylor or another FCSB employee purposely and wrongfully placed a copy of the Reprimand Letter in Ms. Hoffman's local personnel file. ████████████████████████████

47.    **To be clear, the Reprimand Letter – which should have been in a sealed file offsite – suddenly appeared on site at CSMS, where anyone could read it.**

48.    Indeed, unbeknownst to Ms. Hoffman, the Reprimand Letter was the very first document anyone would see when they looked at Ms. Hoffman's local personnel file.

49.    Upon information and belief, Ms. Klena read the Reprimand Letter.

50.    Upon information and belief, Ms. Klena was made aware of the 2018 Litigation ████████████████

51.    Starting on or about November 11, 2022, Ms. Taylor began frequenting CSMS – just like she did in 2016-2017 – and inserting herself and others that reported to her, such as Mr. Kraft, into CSMS' school affairs, for no legitimate business purpose whatsoever.

52.    Ms. Taylor was well aware – as she was a central character in the 2018 Litigation – that her continued presence at CSMS, as well as conducting mandatory meetings that she

required Ms. Hoffman to attend, would trigger Ms. Hoffman's anxiety and other medical conditions.

53.     On December 9, 2022, Ms. Taylor and Mr. Kraft held one such meeting at CSMS which Ms. Hoffman was required to attend.  This meeting, in addition to Ms. Taylor's presence at CSMS and obvious dislike of Ms. Hoffman, triggered Ms. Hoffman to have an anxiety attack.

54.     As a result of Ms. Hoffman's anxiety, she had an awkward interaction with Ms. Taylor in front of Mr. Kraft and another FCSB administrator while leaving CSMS that same day. It was obvious Ms. Hoffman was discussed afterwards, as the three administrators were still outside CSMS approximately 30 minutes after the encounter.

55.     Sure enough, on Saturday, December 10th, Mr. Kraft scheduled a meeting with Ms. Hoffman for the following Monday, December 12th, and told Ms. Hoffman she would face disciplinary action if she did not attend.

56.     Given Mr. Kraft's e-mail, Ms. Hoffman's anxiety went through the roof.  Fearful that Ms. Taylor would once again harass and bully her unless something was done, on December 11th, Ms. Hoffman sent what she thought was a confidential e-mail to the Fairfax County Public Schools Board Members and HR expressing her concerns about Ms. Taylor, and that Ms. Taylor was engaged in suspected acts of wrongdoing and abuse (the "FCPS e-mail").

57.     Rather than address Ms. Hoffman's e-mail, a FCPS Board Member immediately forwarded Ms. Hoffman's e-mail to Ms. Taylor, without redacting any Personal Identifiable Information ("PII").  Thus, Ms. Taylor was aware of Ms. Hoffman's complaints against her – though Ms. Hoffman was unaware of this fact.

58.     Upon information and belief, Ms. Taylor informed Mr. Kraft about Ms. Hoffman's FCPS e-mail.

59. Upon information and belief, Ms. Taylor informed Mr. Underhill about Ms. Hoffman's FCPS e-mail.

60. The following Monday, December 12th, Mr. Kraft came to CSMS to meet with Ms. Hoffman to discuss the December 9th interaction. During the meeting, Mr. Kraft expressed concern about Ms. Hoffman's unprofessional behavior. Ms. Hoffman and Mr. Kraft also discussed Ms. Hoffman's health, but Mr. Kraft did not appear to understand Ms. Hoffman's need for any accommodations.

61. FCSB did not subsequently investigate any of the alleged "unprofessional behavior" or Ms. Hoffman's version of events.

62. On December 21, 2022, Ms. Taylor assigned Eric Underhill ("Mr. Underhill") as the permanent principal at CSMS.

63. Upon information and belief, Mr. Underhill read the Reprimand Letter.

64. Upon information and belief, Mr. Underhill was made aware of the 2018 Litigation ██████████████████

65. Upon information and belief, Ms. Taylor and/or Mr. Kraft gave Mr. Underhill specific instructions regarding Ms. Hoffman.

66. By way of example, on January 27, 2023, Ms. Hoffman was notified via e-mail that Mr. Underhill would perform her evaluation. This was not normal.

67. Out of the 11 English teachers at CSMS, Ms. Hoffman was the only one who was evaluated by Mr. Underhill. The other 10 English teachers – including new teachers and one on "conditional reappointment" – were all evaluated by Dr. Williams.

68. Mr. Underhill conducted Ms. Hoffman's evaluation on February 1, 2023, less than six weeks after he started at CSMS. Though Ms. Hoffman received a rating of "effective"

11

for the first six evaluation criteria, she was put on "Conditional Reappointment" for her rating for the 7th evaluation criteria – "Professionalism."

69.    In that regard, Mr. Underhill did not reference anything he witnessed. In fact, he even admitted he had not witnessed any unprofessional behavior by Ms. Hoffman. Instead, he said his evaluation was based on information provided by Mr. Kraft, and stated "this is what was given to me."

70.    In stark contrast to Mr. Underhill's evaluation, later that year Ms. Hoffman had two other FCSB observations of her class that were extremely positive.

71.    In fact, in the second evaluation, Shirley Duddy ("Ms. Duddy"), a former FCSB principal, specifically noted Ms. Hoffman's professionalism. A true, accurate copy of Ms. Duddy's April 20, 2023, evaluation is attached hereto as **Exhibit C**.

72.    Mr. Underhill's disparate treatment of Ms. Hoffman continued throughout the Spring, culminating with his 2022-23 summative (i.e. year-end) evaluation of Ms. Hoffman (the "Summative Evaluation").

73.    Similar to the Mid-Year Evaluation, Ms. Hoffman was given the lowest rating possible, "Ineffective," for Professionalism. A true, accurate copy of the Summative Evaluation is attached hereto as **Exhibit D**.

74.    In the "Professionalism" section for "Comments," the commentary was not based on Mr. Underhill's own experience; rather it was based on Ms. Hoffman's interactions with Ms. Taylor and Mr. Kraft in December, prior to Mr. Underhill's employment at CSMS. See Exhibit D at 15-16.

12

75.   In fact, Mr. Underhill cited to Ms. Hoffman's December 11th FCPS e-mail, in which she complained about Ms. Taylor, as an example of her unprofessionalism.  See Exhibit D at 16-17.

76.   This was the first time Mr. Underhill had mentioned the FCPS e-mail, thus it was obvious Ms. Taylor had discussed it with him.  The Summative Evaluation was clear retaliation for Ms. Hoffman's December 11th FCPS e-mail.

77.   Upon information and belief, Ms. Taylor reviewed the Summative Evaluation and other reviews of Ms. Hoffman throughout Spring 2023, and provided feedback to Mr. Underhill before said information was provided to Ms. Hoffman.

78.   FCPS Assistant Superintendents do not normally review individual teacher's assessments and evaluations.

79.   On the morning of May 8, 2023, Mr. Underhill met with Ms. Hoffman to review the Summative Evaluation.  During this meeting, Mr. Underhill informed Ms. Hoffman that though he had given her a Summative Score of "Effective," which is the second highest rating, he was nevertheless placing her on Conditional Reappointment for the 2023-24 school year based on her alleged "unprofessionalism."

80.   Mr. Underhill also informed Ms. Hoffman that as a result of the Conditional Reappointment, Ms. Hoffman would not be receiving the step increase all other FCPS teachers would be receiving for the 2023-24 school year.

81.   These adverse employment actions were all clear retaliation for Ms. Hoffman engaging in a protected activity.

82.     After receiving and reviewing the Summative Evaluation, Ms. Hoffman was shocked and extremely concerned about her position for the 2023-24 school year.  Ms. Hoffman's concerns were well-founded.

83.     On May 15, 2023, Mr. Underhill informed Ms. Hoffman that she was being moved to an 8th grade position in a downstairs classroom with no windows – even though Ms. Hoffman is the most tenured English teacher at CSMS.

84.     This destaff and adverse action against Ms. Hoffman was in direct violation of FCSB' own regulations.

85.     Pursuant to FCSB HR Regulation 4250.8(III), a "Destaff" is "The reassignment of an employee from a position or work location for reasons . . .  as determined by the principal, program manager, or Superintendent."  Pursuant to Section V, when a destaffing occurs "the teacher(s) with the least service shall be designated for a destaff action."  See **Exhibit E.**

86.     In other words, the most junior – not the most senior – CSMS teacher should have been reassigned to 8th grade and/or moved to a different classroom.  Here, the exact opposite occurred, as Ms. Hoffman had the **most** service, yet it was Ms. Hoffman who was designated for the destaff action.

87.     FCSB was well aware that it was acting in direct contravention of FCSB HR Regulation 4250.8 when it destaffed Ms. Hoffman, and that seniority impacts which employees are reassigned to a different position.

88.     ████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████

14

89.

90.    There was no legitimate business purpose for the decision to move Ms. Hoffman to 8th grade, as *inter alia* Ms. Hoffman has never taught 8th grade.  Additionally, the 8th grade classroom Ms. Hoffman was assigned to was located in the basement of CSMS, with no windows, subject to heavy student traffic, and literally as far as possible from Ms. Hoffman's old classroom. ███████████████████████████████████████ ███████████

91.    Despite repeated requests for reasonable accommodations, FCSB refused to allow Ms. Hoffman to retain her current position, classroom, and accommodations by July 1, 2023. Ms. Hoffman was unable to return to work for the 2023-24 school year.

92.    Ms. Hoffman was shocked and appalled by FCSB' and Mr. Underhill's treatment of her, ████████████████████████████ Ms. Hoffman retained counsel and filed an EEOC Charge and OCR Complaint on December 19, 2023.

93.    In June 2024, FCSB counsel indicated they had not been made aware of the EEOC Charge and OCR Complaint, and that FCSB wished to mediate.

94.    In Summer 2024, CSMS had an open teaching position for 7th grade English for the 2024-25 school year in Ms. Hoffman's former, preferred classroom.

15

95. Ms. Hoffman agreed to delay requesting her RTS, and the parties agreed to mediation.

96. The mediation took place on August 29, 2024, and the matter was not resolved.

97. After the mediation, counsel for Ms. Hoffman was made aware that prior to the mediation – but after the parties had agreed to mediate – FCSB employees had been in direct communications with Ms. Hoffman regarding accommodations.

98. Because the 2024-25 school year had begun, Ms. Hoffman was also now required to undergo another physical examination in order to maintain her disability benefits. FCSB was aware of this fact, and was also well aware that this examination would be extremely traumatic for Ms. Hoffman.[1]

99. On September 25, 2024, Ms. Hoffman had to undergo the physical examination.

*FCSB targets Ms. Hoffman's family*

100. Throughout this saga, Mr. Hoffman – Ms. Hoffman's husband – has remained a FCSB employee at CSMS. And this year, the Hoffman's oldest son began attending CSMS as a 7th grader.

101. On November 5, 2024, the EEOC issued a Notice of Right to Sue ("RTS") with respect to Ms. Hoffman's Title VII and ADA claims.

102. On November 6th – the very next day – Dr. Roger Baskin, ("Dr. Baskin"), a new teacher at CSMS, sent an e-mail captioned "Teacher Leftovers" to CSMS staff stating that, "[a]n English teacher, who is no longer at Sandburg, left behind lots of books and boxes full of hidden

---

[1] In that regard, FCSB had made Ms. Hoffman undergo a physical examination on May 18, 2017, and it was part of the reason for the 2018 Litigation. Specifically, prior to the examination FCSB provided the examiner with pictures of Ms. Hoffman's Facebook posts regarding her dead baby. ████████████

████████████████████████████

treasures. If you are interested in exploring the possibilities, feel free to stop by Mrs. Mehta's desk for access to the resources."

103. The English teacher referenced in the e-mail is Ms. Hoffman.

104. FCSB is well aware Ms. Hoffman has not left CSMS, and is out on medical leave, pending resolution of this litigation.

105. Moreover, when a teacher is out on medical leave, it is CSMS standard operating procedures to store the teacher's possessions at CSMS, not to give them away.

106. Upon information and belief, Mr. Underhill was made aware of the issuance of the RTS.

107. Upon information and belief, Mr. Underhill instructed and/or provided facts that led Dr. Baskin to send the "Teacher Leftovers" e-mail.

108. Mr. Underhill is well aware Mr. Hoffman is Ms. Hoffman's husband, and could have easily retrieved her belongings if necessary. Yet he did not contact Mr. Hoffman, and chose to involve Dr. Baskin in this matter.

109. Dr. Baskin is Mr. and Ms. Hoffman's son's teacher.

110. The fact that FCSB is now involving a child in its illegal conduct against Ms. Hoffman is deplorable.

111. On November 7, 2024, Ms. Hoffman's counsel sent FCSB counsel a "Cease and Desist" letter, and requested that the disparaging information about Ms. Hoffman be retracted.

112. FCSB did not send a retraction.

113. On the morning of November 8, 2024, Dr. Baskin sent an e-mail stating simply, "The information mentioned in the previous e-mail is no longer available."

114. FCSB is well aware Ms. Hoffman is eager to return to teach at CSMS.

17

115. However, as a result of FCSB' actions, Ms. Hoffman has been forced to remain out of work on medical leave since July 1, 2023.

116. To date, FCSB has refused to allow Ms. Hoffman to retain her current position and accommodations for the 2024-25 school year, interfering with Ms. Hoffman's rights and in furtherance of FCSB's discrimination against Ms. Hoffman.

117. Ms. Hoffman remains out on long-term disability, and is receiving significantly reduced income and has not been eligible for the step increases in salary that she would have received if she was able to work.

118. FCSB' demotion and adverse actions against Ms. Hoffman ████████████ ████████████████████████████, as well as FCSB's own regulations, and its retaliatory and discriminatory treatment of Ms. Hoffman – and now, apparently, her family – is egregious.

### COUNT ONE –
### BREACH OF CONTRACT

119. The allegations of the foregoing paragraphs are incorporated as if realleged herein.

120. ████████████████████████████████████████████ ██████████████

121. ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████

122. ████████████████████████████████████████ ████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

123.    As a direct and proximate result of FCSB's breach, Ms. Hoffman has suffered and continues to suffer significant damages including, but not limited to: loss of compensation; loss of career and business opportunities and advancement; loss of good will and reputation; severe emotional distress; difficulty sleeping; exacerbation of her disabilities, including PTSD, anxiety, and depression; frustration, litigation expenses including attorneys' fees, and other pecuniary and non-pecuniary damages.

**COUNT TWO –**
**RETALIATION IN VIOLATION OF TITLE VII**

124.    The allegations of the foregoing paragraphs are incorporated as if realleged herein.

125.    Ms. Hoffman participated in an activity protected under federal law, that is engaging in free speech and also alleging wrongdoing on the part of Ms. Taylor and opposing Ms. Taylor's harassment.

126.    Ms. Hoffman also participated in an activity protected under federal law by filing her Complaint with the OCR, filing her Charge with the EEOC, and ultimately seeking a Right to Sue.

127.    To be clear, Ms. Hoffman's activities are all deemed "protected" under FCSB's own guidelines, which states in applicable part as follows:

> [A] protected activity includes, but is not limited to: a good faith disclosure of information about an action or activity giving rise to an allegation of wrongdoing; opposition to unlawful discrimination, opposition to workplace harassment . . .

FCSB Policy 1106.  See **Exhibit F**.

19

128.   As described above, FCSB retaliated against Ms. Hoffman in violation of 42 U.S.C. § 1983.  This retaliation included but was not limited to:  wrongfully informing Mr. Kraft and Mr. Underhill about ███████████████████ the Reprimand Letter; causing Mr. Underhill – instead of Dr. Williams – to perform Ms. Hoffman's mid-year evaluation even though he had been at CSMS less than 6 weeks; reviewing and revising all reviews and evaluations throughout Spring 2023; causing Mr. Underhill to issue a conditional reappointment to Ms. Hoffman; causing Mr. Underhill to place Ms. Hoffman in an 8th grade class where she had never taught before, and violating FCSB's regulations in doing so; and refusing to reappointment Ms. Hoffman to a 7th grade position, ████████████████████████████ ██████

129.   Moreover, after being made aware of the EEOC Charge, FCBS escalated its retaliation.  This retaliation included but was not limited to: misrepresenting its good faith intent to mediate so that Ms. Hoffman did not file suit to seek immediate reinstatement for the 2024-25 school year; purposely delaying negotiations so that Ms. Hoffman would be forced to undergo a physical examination FCSB knew would be traumatic; attempting to convert Ms. Hoffman's belongings by causing a "Teacher Leftovers" e-mail to be sent out to Mr. and Ms. Hoffman's colleagues, rather than contact Ms. Hoffman's husband, as would be standard operating procedures; and causing the teacher who (likely unwittingly) sent out the e-mail to be Mr. and Ms. Hoffman's son's 7th grade teacher.

130.   All of the foregoing FCSB actions demonstrate that FCSB acted with malice, spite, and ill will, and/or reckless indifference, to the federally protected rights of Ms. Hoffman.

131.   As a direct and proximate result of FCSB's actions, Ms. Hoffman has suffered and continues to suffer severe emotional distress and physical injury.  Such injury includes pain,

suffering, inconvenience, mental anguish, embarrassment, humiliation, stomach pains, depression, anxiety, fearfulness, difficulty sleeping, loss of enjoyment of life, exacerbation of her symptoms of PTSD, exacerbation of diagnosed depression and anxiety, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, and other non pecuniary losses.

132.    Due to the severity of FCSB's conduct, Ms. Hoffman is entitled to punitive damages.

### COUNT THREE –
### HOSTILE WORK ENVIRONMENT IN VIOLATION OF ADA

133.    The allegations of the foregoing paragraphs are incorporated as if realleged herein.

134.    At all relevant times, Ms. Hoffman was a qualified individual with a disability, or perceived disability, within the protected class of the ADA.

135.    FCSB, through its agents and officers, discriminated against Ms. Hoffman and created a hostile work environment on account of her diagnosis of PTSD, anxiety, and depression.

136.    Specifically, FCSB targeted Ms. Hoffman by purposely placing her in situations that, per her accommodations with Dr. Barker for almost four years prior, she was not accustomed to, including forcing Ms. Hoffman to attend multiple meetings in large groups with Ms. Taylor, who was the subject of the parties' 2018 Litigation.

137.    When Ms. Hoffman (unsurprisingly) did not react well in these situations as a result of her disability, she was labeled "unprofessional"  and placed on conditional reappointment – notwithstanding the undisputed fact that Ms. Hoffman was an excellent teacher and, *inter alia*, had some of the highest SOL pass rates of the entire school.

21

138.    FCSB then disregarded its own rules and regulations and destaffed Ms. Hoffman, the most senior teacher at FCSB, and assigned her to an 8th grade classroom.

139.    The 8th grade classroom was located in the basement of CSMS, with no windows, subject to heavy student traffic, and literally as far as possible from Ms. Hoffman's old classroom.

140.    FCSB refused to accommodate Ms. Hoffman by assigning her to a 7th grade English classroom, even though that was where she had always taught, and achieved excellent results with her students.

141.    FCSB refused said accommodations even though 7th grade positions at CSMS were available for both the 2023-24 and 2024-25 school year.

142.    All of the foregoing FCSB actions demonstrate that FCSB acted with malice, spite, and ill will, and/or reckless indifference, to the federally protected rights of Ms. Hoffman.

143.    As a direct and proximate result of FCSB's actions, Ms. Hoffman has suffered and continues to suffer severe emotional distress and physical injury.  Such injury includes pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, stomach pains, depression, anxiety, fearfulness, difficulty sleeping, loss of enjoyment of life, exacerbation of her symptoms of PTSD, exacerbation of diagnosed depression and anxiety, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, and other non pecuniary losses.

144.    Due to the severity of FCSB's conduct, Ms. Hoffman is entitled to punitive damages.

## COUNT FOUR –
## RETALIATION IN VIOLATION OF ADA

145.    The allegations of the foregoing paragraphs are incorporated as if realleged herein.

146.    At all relevant times, Ms. Hoffman was a qualified individual with a disability, or perceived disability, within the protected class of the ADA.

147.    FCSB, through its agents and officers, subjected Ms. Hoffman to retaliation when she exercised her rights under the ADA by requesting reasonable accommodations – which included essentially maintaining the same job Ms. Hoffman had since 2008, i.e. teaching a familiar 7th grade curriculum, and having a classroom with windows located on the second floor – and subsequently filing a discrimination complaint when FCSB refused her request.

148.    FCSB's retaliation including:  causing Mr. Underhill to issue a conditional reappointment to Ms. Hoffman on the basis of her lack of "professionalism" even though the underlying reasons for the unprofessionalism claim were related to Ms. Hoffman's disability; causing Mr. Underhill to place Ms. Hoffman in an 8th grade class where she had never taught before, in a classroom FCSB knew or should have known would trigger and exacerbate Ms. Hoffman's disabilities, and violating FCSB's regulations in doing so; and refusing to reappoint Ms. Hoffman to a 7th grade English position, when that was a reasonable accommodation as a 7th grade English position(s) was/were available.

149.    Moreover, after being made aware of the EEOC Charge, FCBS escalated its retaliation.  This retaliation included but was not limited to: misrepresenting its good faith intent to mediate so that Ms. Hoffman did not file suit to seek immediate reinstatement for the 2024-25 school year; purposely delaying negotiations so that Ms. Hoffman would be forced to undergo a physical examination FCSB knew would be traumatic; attempting to convert Ms. Hoffman's

belongings by causing a "Teacher Leftovers" e-mail to be sent out to Mr. and Ms. Hoffman's colleagues, rather than contact Ms. Hoffman's husband, as would be standard operating procedures; and causing the teacher who (likely unwittingly) sent out the e-mail to be Mr. and Ms. Hoffman's son's 7th grade teacher.

150.    All of the foregoing FCSB actions demonstrate that FCSB acted with malice, spite, and ill will, and/or reckless indifference, to the federally protected rights of Ms. Hoffman.

151.    As a direct and proximate result of FCSB's actions, Ms. Hoffman has suffered and continues to suffer severe emotional distress and physical injury.  Such injury includes pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, stomach pains, depression, anxiety, fearfulness, difficulty sleeping, loss of enjoyment of life, exacerbation of her symptoms of PTSD, exacerbation of diagnosed depression and anxiety, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, and other non pecuniary losses.

152.    Due to the severity of FCSB's conduct, Ms. Hoffman is entitled to punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff ASHLEY HOFFMAN requests that this Court enter judgment in her favor and against Defendant FAIRFAX COUNTY SCHOOL BOARD on each of the above Counts, and further

(a)    Award judgment in Ms. Hoffman's favor and against the Defendant in an amount not to exceed $2,000,000, plus all pre- and post-judgment interest and consequential damages allowed by law; and in addition

24

(b)     Award Ms. Hoffman punitive and exemplary damages, to be determined by a jury, on Counts Two, Three, and Four, in an amount not to exceed $350,000, and in addition

(c)     Award Ms. Hoffman attorneys' fees and the costs of this action; and in addition

(d)     Award Ms. Hoffman appropriate injunctive relief, which may include, but not be limited to, reinstatement and back pay; and in addition

(e)     Award Ms. Hoffman such other and further relief as may be appropriate under the circumstances.

## JURY DEMAND

**PLAINTIFF ASHLEY HOFFMAN DEMANDS A TRIAL BY JURY ON ALL COUNTS ABOVE.**

December 9, 2024                          Respectfully submitted,

*Jessica L. Sartorius*

_____

Jessica L. Sartorius, VSB No. 68622
Adam Nadelhaft, VSB No. 91717
CHARLSON BREDEHOFT COHEN
BROWN & NADELHAFT, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, VA 20190
(703) 318-6800  Telephone
(703) 318-6808  Facsimile
jsartorius@cbcblaw.com
anadelhaft@cbcblaw.com
*Counsel for Plaintiff, Ashley Hoffman*